NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RUSSELL P., *Appellant*,

*v.*

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, R.P., *Appellees*.

No. 1 CA-JV 13-0279
FILED 4-3-2014

Appeal from the Superior Court in Maricopa County
No. JD510943
The Honorable Peter A. Thompson, Judge

**AFFIRMED**

COUNSEL

Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Dawn R. Williams
*Counsel for Appellees*

---

**DECISION ORDER**

Presiding Judge Donn Kessler delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Maurice Portley joined.

---

**K E S S L E R,** Presiding Judge:

¶1　　　　　Russell P. ("Father") appeals the juvenile court's order finding his child, R.P., dependent. *See* Ariz. Rev. Stat. ("A.R.S.") section 8-201(13)(a)(iii) (2013). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2　　　　　Father is the biological parent and sole custodian of R.P., who was six-years old at the time of the underlying events. On February 12, 2013, R.P. told her teacher that her bottom hurt and, in response to the teacher's questions, told the teacher that, Father "pushed too hard and put a hammer inside." The teacher notified the school nurse of the statements, who then reported the allegation to the police. The police reported the allegation to Child Protective Services ("CPS") who took custody of R.P. and arranged for a forensic interview and physical examination.[1]

¶3　　　　　During the interview, R.P. disclosed that Father "knocked her bottom with a hammer." R.P stated that it happened when she was getting ready to go to school and when she got back from school. The interviewer was unable to confirm what the child was referring to by the term "hammer." R.P. stated that the hammer was not a part of Father's body but demonstrated with stuffed animals that Father touched her crotch area and that Father was partially on top of her on her bed. The physical examination report found "no evidence of acute or healed injury." However, the medical provider explained that given the nature of alleged sexual assaults, there might not be physical evidence of an injury.

¶4　　　　　Immediately following the forensic interview and physical examination, CPS placed R.P. with her paternal aunt and then the paternal grandmother pending dependency proceedings. On February 21, 2013,

---

[1] The police investigation was later closed for a lack of independent, corroborative evidence.

R.P. was admitted to Phoenix Children's Hospital for mental illness and psychotic episodes. While there, R.P. had visual and auditory hallucinations and changed her previous allegations against Father, claiming an imaginary boy named Aiden hit her with the hammer.

¶5            R.P. is developmentally delayed and has been diagnosed with autistic disorder, attention deficit hyperactivity disorder, sensory processing disorder, and bipolar disorder. R.P. has a history of auditory and visual hallucinations.

¶6            The court held a two-day dependency adjudication hearing. The court heard testimony from two of R.P.'s teachers, R.P.'s forensic interviewer, two CPS social workers, and R.P.'s mother, Father, paternal aunt, and paternal grandmother. R.P.'s teachers testified that R.P. first relayed to them the allegation against Father. The social workers testified that R.P. repeated the allegations in the car ride to the hospital and in the forensic interview. A recording of the interview was also submitted into evidence and the court indicated that it closely reviewed that recording. A psychological examination of Father stated that there was little concern as to Father except for this alleged abuse, but recommended a psychosexual examination of Father. R.P.'s aunt testified that R.P. had severe behavioral and psychological issues, including aggression and hallucinations, and that Father has been a model parent. R.P.'s paternal grandmother testified that R.P. had recanted the allegations against Father on several occasions. Father denied any assault occurred. The court initially concluded that this was a very close case and a psychosexual report of Father would be helpful in deciding the dependency issue, but, because the evaluation might delay the court's ruling on the dependency petition, the State objected to having the evaluation ordered.[2]

¶7            The court held that despite the case being based on a "single allegation of abuse brought against what CPS . . . otherwise found to be a fit and proper, if not, exceptional, parent" based on all the evidence and the credibility of the witnesses, the State proved R.P. was dependent

_____

[2] Father subsequently participated in such an examination and submitted it to the juvenile court. While this appeal was pending, the juvenile court returned R.P. to Father. Both parties, however, asked this court to resolve the appeal without waiting to see if the juvenile court would dismiss the dependency at the next review hearing.

based on the allegation of a single incident of abuse.[3] Father timely appealed. We have jurisdiction pursuant to A.R.S. § 12-120.21(A)(1) (2003).

## DISCUSSION

**¶8** Father challenges the sufficiency of the evidence to support the juvenile court's finding of dependency. "We will not disturb the juvenile court's ruling in a dependency action unless the findings upon which it is based are clearly erroneous and there is no reasonable evidence supporting them." *Pima Cnty. Juv. Dependency Action No. 118537*, 185 Ariz. 77, 79, 912 P.2d 1306, 1308 (App. 1994); *see also Maricopa Cnty. Juv. Action No. J-75482*, 111 Ariz. 588, 591, 536 P.2d 197, 200 (1975) ("Generally, the decision of the trial court as to the weight and effect of evidence will not be disturbed unless it is clearly erroneous. All reasonable inferences must be taken in favor of supporting the findings of the trial court, and if there is any evidence to support the judgment, it must be affirmed." (internal citation omitted)).

**¶9** "A parent has a constitutional right to raise his or her child without governmental intervention. The government may not interfere with that fundamental right unless a court finds that: (1) the parent is unable to parent the child for any reason defined by statute; and (2) the parent has been afforded due process." *Carolina H. v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 569, 571, ¶ 6, 307 P.3d 996, 998 (App. 2013). For a child to be found dependent, the State must prove one of the grounds found in A.R.S. § 8-201(13)(a) by a preponderance of the evidence, including, for example, that the child's home is unfit by reason of abuse by a parent. A.R.S. § 8-201(13)(a)(iii). Abuse includes infliction of physical injury or sexual abuse, sexual conduct with a minor, sexual assault, or molestation of a child. A.R.S. § 8-201(2)(a).

**¶10** Father argues that the court erred in finding that the State met its burden of proof, claiming there is no reasonable evidence in the record to support a finding of dependency. Father argues that there is no physical evidence to support the findings and the allegations were irrational. Father further argues that the allegations are not credible because they were made by a child who suffers from mental illness, including auditory and visual hallucinations, and who has a history of

---

[3] The juvenile court also found R.P. was dependent as to Mother. Mother did not appeal the ruling and is not a party to this appeal.

making allegations of harm by other caregivers. However, it is not for this court to assess the credibility of evidence. *See Maricopa Cnty. Juv. Action No. JV-132905*, 186 Ariz. 607, 609, 925 P.2d 748, 750 (App. 1996) ("The juvenile court is in the best position to measure the credibility of witnesses.").

¶11      The juvenile court did not err in finding by a preponderance of the evidence that R.P. was dependent as to Father because of a single allegation of assault. In weighing the evidence, the court stated it had considered the all the testimony and had closely watched the video recording of the forensic interview of R.P. The court also considered R.P.'s age, medical conditions, recantations, and previous, unsubstantiated allegations of assault by caregivers. The court also considered the evidence that it is common for children to later recant allegations of abuse, but children rarely change the allegation to attribute the abuse to another person. The court acknowledged that Father was fully cooperative with CPS's investigation and considered testimony pointing to Father's exemplary parenting but for the single allegation of assault, including evidence that Father is a concerned and actively engaged parent.

¶12      We agree with the juvenile court that this is a difficult case. As the court explained:

> The decision here is a difficult one . . . [in] dealing with the possibility of an incorrect ruling. Children who are untruthful, who have imaginary friends . . . who are poor witnesses of events or unable to recall or describe details of their abuse or the perpetrator can still be victims of molest or physical abuse. Parents and caregivers can also be caught up in what are later learned to be false allegations against them with grave consequences to their lives and reputations . . . . [A]t this stage of the case the court is tasked with determining whether there is a mere preponderance of the evidence to sustain a finding of dependency . . . . After weighing the credibility of witness testimony and the proof presented; . . . the Department has established the allegations in the dependency petition by a preponderance of the evidence.

**¶13** Despite this difficulty, based on the record and the standard of review, there is reasonable evidence to support the juvenile court's decision that R.P. was dependent as to Father.

## CONCLUSION

**¶14** Having found that the juvenile court did not abuse its discretion in finding that the evidence was sufficient to support the juvenile court's finding that R.P. was dependent as to Father, we affirm the order.



Ruth A. Willingham · Clerk of the Court
F I L E D : MJT